UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTINA S.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:21-CV-261-MGG |

**OPINION AND ORDER**

Plaintiff Christina S. ("Ms. S") seeks judicial review of the Social Security Commissioner's decision denying Ms. S's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1) and 42 U.S.C. § 405(g). [*See* DE 9]. For the reasons discussed below, the Court **REMANDS** the decision of the Social Security Administration ("SSA").

**I.    OVERVIEW OF THE CASE**

Ms. S protectively filed for DIB on February 14, 2019. In her application, Ms. S alleged a disability onset date of August 31, 2018. Ms. S's claim was denied initially on July 16, 2019, and upon reconsideration on December 20, 2019. Following a telephone hearing on August 18, 2020, an Administrative Law Judge ("ALJ") issued a decision on

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

August 28, 2020, finding that Ms. S was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. S had not engaged in substantial gainful activity from her alleged onset date of August 31, 2018, through the date of ALJ's decision on August 28, 2020.

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. Here, the ALJ found that Ms. S suffers from the following severe impairments: obesity; Achilles tendinosis of the left heel; bilateral hip bursitis; bilateral chondromalacia of the knees; degenerative changes of the lumbar spine; and post-traumatic stress disorder ("PTSD"). Conversely, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on a claimant's ability to perform basic work functions. *See, e.g.,* 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here, the ALJ found that Ms. S had the following non-severe medically determinable impairments: hypertension; GERD; Vitamin D deficiency; status-post left cubital tunnel release; and chronic obstructive pulmonary disorder ("COPD").

At Step Three, the ALJ found that none of Ms. S's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the

2

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this finding, the ALJ considered listings 1.02 and 1.04. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. S can perform her past relevant work based upon her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that the individual can do despite her limitations. 20 C.F.R. § 404.1545(a). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. Here, the ALJ found that Ms. S has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain postural and hazard limitations:

> the claimant can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to 6 hours in an 8-hour workday; and sit up to 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to wetness and hazards, such as unprotected heights. The claimant can understand, remember, and carryout simple instructions. The claimant can relate on a superficial and ongoing basis with coworkers and supervisors but no interaction with the public. The claimant cannot perform fast paced assembly type work but can satisfy end of day goals. The claimant can tend to tasks for a sufficient time to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks.

Based on this RFC, at Step Four, the ALJ found that Ms. S was unable to perform her past relevant work as a glass cutter (work that is generally done at the semiskilled/heavy exertion level but was performed by Ms. S at the medium and heavy

3

exertional levels). [*Id.* at 28]. Accordingly, the ALJ moved on to the last step in the five-step sequential analysis to determine whether Ms. S can perform other work.

At Step Five, the burden of proof shifts to the SSA Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). ALJs typically enlist a vocational expert ("VE") to testify regarding which occupations, if any, a claimant can perform. *See* S.S.R. 83-12. VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the VE, using the DOT, identified the following four representative jobs that Ms. S could still perform—office helper, laundry sorter, small products assembler, and mail clerk, which, respectively, have 15,000 jobs nationally, 40,000 jobs nationally, 280,000 jobs nationally, and 170,000 jobs nationally.

Finding that Ms. S could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Ms. S was not under a disability, as defined in the Act, from her alleged onset date through the date of the decision. [DE 16 at 20, 29; AR 16, 25]. The ALJ's decision became the final decision of the Commissioner when the SSA Appeals Council declined review on February 9, 2021. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. S sought judicial review of the Commissioner's decision on April 15, 2021. Ms. S filed her opening brief on December 30, 2021, and the Commissioner filed her

4

Memorandum in Support of Decision on March 10, 2022. This matter became ripe on March 24, 2022, when Ms. S filed her reply.

## II.   LEGAL STANDARD

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of

5

credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Accordingly, at a minimum, the ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address every piece of evidence in the record so long as he provides a glimpse into the reasoning behind his analysis to build the requisite "logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

On the other hand, the deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013). Likewise, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "The ALJ must confront the evidence that does not support his conclusion and support why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). An ALJ's decision will lack sufficient evidentiary support and require remand if the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014).

### III.   ANALYSIS

In her opening brief, Ms. S contends that the ALJ's RFC determination is not supported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the medical opinion of the SSA consultative examiner, Dr. R.

6

Gupta. [DE 17 at 1]. Specifically, Ms. S maintains that the ALJ mischaracterized Dr. Gupta's medical opinion and dismissed it without adequately evaluating the opinion for supportability and consistency as required by SSA's regulations. In response, the Commissioner contends that the ALJ appropriately considered Dr. Gupta's consultative examination report and included limitations in the RFC that were supported by the record.

For claims filed after March 27, 2017, such as Ms. S's claim, an ALJ "does not give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The regulations instead require an ALJ to explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Persuasiveness of a medical opinion is based upon several factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; and specialization. 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," while "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31,

7

2022) (internal citation omitted). Accordingly, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinion(s) . . . will be." Id. § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." Id.

The ALJ must "explain how [he] considered the supportability and consistency factors." Id. "Failure to adequately discuss supportability and consistency requires remand." Willis v. Acting Comm'r of Soc. Sec., No. 3:21-cv-178 JD, 2022 WL 2384031, at *3 (N.D. Ind. July 1, 2022) (citing Tammy M. v. Saul, No. 2:20CV285, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021)). However, the ALJ is not required to explain how he considered the other factors if they are not relevant to the decision. Id. Consistent with general legal standards for reviewing social security cases, an ALJ need only "minimally articulate his reasoning for how he assessed a medical opinion, [but] he must still consider the regulatory factors and build a 'logical bridge' from the evidence to his conclusion." Taylor v. Kijakazi, No. 2:22-cv-32-PPS-JPK, 2023 WL 334601, at *3 (N.D. Ind. Jan. 20, 2023) (internal citation omitted).

### A.   Dr. Gupta's Physical Examination and Medical Source Statement

Ms. S attended a consultative examination with Dr. Gupta on May 9, 2019, on referral from the Disability Determination Bureau. [DE 11 at 22, AR 18; Exhibit B5F, DE 11 at 393, AR 389]. As part of the consultative examination, Dr. Gupta conducted a physical examination and provided a medical source statement.

8

Dr. Gupta's physical examination covered numerous areas. [DE 11 at 394-95; AR 390-91]. The Court recounts certain relevant portions here. Dr. Gupta observed that Ms. S had "normal vascular breath sounds without wheezing, rhonchi or rales." [DE 11 at 394; AR 394]. Dr. Gupta also observed that "[t]here is spinous and paraspinal tenderness in lumbar region with decreased range of motion . . . . There is full range of motion in cervical and thoracic region." [*Id.* at 395; AR 391]. As to Ms. S's upper extremities, Dr. Gupta noted that

> . . . . There is no stiffness, effusion, amputation, atrophy, ulcers, or edema in upper extremities. There is pain[,] weakness[,] and numbness and tingling in bilateral hands with normal range of motion. . . . There is full range of motion in all upper extremity. Strength is 4/5 in all upper major muscle groups.

[*Id.*]. As to Ms. S's lower extremities, Dr. Gupta observed that "[t]here is pain and tenderness in left heel/foot causing difficulty with putting weight on foot and wears an orthopedic boot. . . . there is full range of motion in all lower extremities. Strength is 5/5 in all lower major muscle groups." [*Id.*] Dr. Gupta also observed that Ms. S had normal grip strength and "good fine finger manipulative abilities, including the ability to button, zip, and pick up coins." [*Id.*].

Finally, as to Ms. S's gait, Dr. Gupta noted that "[s]he has an antalgic/abnormal gait with an assistive device (**cane and orthopedic boot).** She is unable to stoop and squat. She is unable to walk heel to toe and tandemly. She is able to get on and off the examination table without difficulty and did not require any assistance. She is able to stand from a sitting position with difficulty." [*Id.* (emphasis in original)]. The gait provision of the physical examination section also included the following question:

9

"Was a cane or any other assistance device prescribed by a physician?" In response, Dr. Gupta's notes provide: "Yes a cane and orthopedic boot that is medically No (is/not medically necessary)." [DE 11 at 395; AR 391].

Dr. Gupta then provides the following as a "medical source statement": "[Ms. S] is unable to do work related activities such as sitting, standing, walking or lifting, carrying and handling objects due to pain. [Ms. S] is able to hear, see and speak normally. [Ms. S] is able to understand with normal concentration, memory, and social interactions." [DE 11 at 396; AR 392].

Dr. Gupta's record concludes with a Range of Motion chart indicating that Ms. S had a reduced range of motion in her lumbar spine and left ankle. [*Id.* at 397; AR 393]. Specifically, for her lumbar spine, Dr. Gupta reported that Ms. S had a forward flexion of 20 (normal range of motion listed as 90), extension 10 (normal range of motion listed as 25), and lateral flexion 20 on each side (normal range of motion listed as 25). For Ms. S's left ankle, Dr. Gupta noted that Ms. S's dorsiflexion was 10 (normal range of motion listed as 20) and her plantar flexion 10 (normal range of motion listed as 40). *See id.*

### B. The ALJ's Consideration of Dr. Gupta's Consultative Examination

The ALJ referenced findings from Dr. Gupta's physical examination and Dr. Gupta's medical opinion in the decision. First, the ALJ cited findings from Dr. Gupta's physical examination as part of the discussion of Ms. S's severe and non-severe

10

impairments at Step Two and as part of the ALJ's determination of Ms. S's RFC at Step Four.[2]

At Step Two, the ALJ referenced Dr. Gupta's grip strength and fine finger manipulation findings as part of the ALJ's finding that Ms. S's status-post left cubital tunnel release was a non-severe impairment. [DE 11 at 22; AR 18]. The ALJ also referenced Dr. Gupta's finding that Ms. S had clear lungs with no wheezing to explain his determination that Ms. S's COPD was a non-severe impairment. [*See id.*]. At Step Four, the ALJ discussed Dr. Gupta's finding that Ms. S had tenderness in her lumbar spine and decreased range of motion, and again referenced Dr. Gupta's finding as to Ms. S's grip strength and fine finger manipulation. The ALJ also stated that "Dr. Gupta further indicated that [Ms. S] had an antalgic gait but her cane was not medically necessary as well as full strength in her legs." [DE 11 at 25; AR 21].

Next, the ALJ considered Dr. Gupta's medical opinion along with opinions from the State Agency Consultants, an opinion from Dr. Grove (a podiatrist who treated Ms. S from approximately December 2018 to April 2019), and the opinion of the State Agency Psychological Consultant. The ALJ first discussed the opinions of the State Agency Consultants, who found that Ms. S had an RFC for light work with certain postural and hazard restrictions. The ALJ found these opinions persuasive, citing to multiple parts of the record consistent with the State Agency Consultant's opinions. The ALJ next discussed Dr. Grove's opinion that Ms. S could not stand or walk for more

---

[2] The ALJ also discussed Dr. Gupta's findings regarding Ms. S's mental impairment. However, Ms. S has not challenged or otherwise discussed this portion of Dr. Gupta's report, so the Court will not address it here.

11

than 15 minutes every hour. The ALJ found that Dr. Grove's opinion was not persuasive because Dr. Grove reached this opinion shortly after Ms. S's surgery and because his opinion was only meant to be temporary.

Regarding Dr. Gupta's opinion, the ALJ acknowledged that Dr. Gupta had opined that Ms. S could not do work-related activities such as sitting, standing, walking, and lifting. The ALJ explained that he did not find Dr. Gupta's opinion persuasive because "it is not consistent with or supported by the record. The undersigned notes that [Ms. S] testified at the hearing as to some ability to sit, stand, and walk as well as complete chores. [citation omitted]. Dr. Gupta's opinion also fails to provide any specific restrictions." [DE 11 at 28; AR 24].

C.   **Discussion**

Ms. S contends that the ALJ "mischaracterized Dr. Gupta's opinion and summarily dismissed it one sentence" such that remand is required. [DE 17 at 10]. In response, the Commissioner maintains that the ALJ properly articulated his consideration of the supportability and consistency factors regarding Dr. Gupta's opinion. As discussed below, the Court agrees with Ms. S that the ALJ failed to adequately discuss the consistency and supportability factors as to Dr. Gupta's opinion such that remand is appropriate.

Here, the ALJ first indicated that the Dr. Gupta's opinion was not persuasive because "it is not consistent with or supported by the record." [DE 11 at 28; AR 24]. As an initial matter, general statements that a medical opinion is not consistent with the record are insufficient under the regulations. *See, e.g., Willis*, 2022 WL 2384031, at *4

12

(finding that an ALJ's decision stating that medical opinions were either "not consistent with the available medial evidence summarized above" or "somewhat consistent with the available medical evidence summarized above" without describing specific evidence considered required remand); *see also Michael L. v. Saul*, No. 2:20CV238, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021) (stating "the ALJ cannot merely summarize the evidence, as a whole, and then conclude that [certain medical] opinions are not consistent with the evidence as a whole. Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined [certain medical] opinions and why.")

The Commissioner contends that the ALJ did discuss evidence inconsistent with Dr. Gupta's opinion. Yet the only evidence that the ALJ discussed as inconsistent with Dr. Gupta's opinion was Ms. S's hearing testimony and her responses to a function report dated April 2, 2019 (Exhibit B3E). Specifically, the ALJ stated that Dr. Gupta's opinion about Ms. S's work-related abilities was not consistent with her hearing testimony that she had "some ability to sit, stand, and walk as well as complete chores." [DE 11 at 28; AR 34]. It is true that Ms. S testified about her ability to sit, stand, walk, and complete chores at the hearing. Indeed, Ms. S testified that she could stand for about 15-20 minutes at a time, that she could sit for about 45 minutes in a typical office chair, and that she could walk for about 20-40 minutes at a time. [DE 11 at 51-53; AR 47-49]. Ms. S further testified that she could do dishes for about 15 minutes at a time and that she strains carrying a gallon of milk. [*Id.*]

13

However, without further explication that is presently absent from the ALJ's decision, it is not apparent how Ms. S's testimony is inconsistent with Dr. Gupta's opinion. To reiterate, Dr. Gupta opined that that Ms. S could not engage in "work related" sitting, standing, walking and lifting, and Dr. Gupta conducted Ms. S's physical examination and provided this medical source statement at the request of the Indiana Disability Determination Bureau. A medical source statement is a "medical opinion[] submitted by accepted medical sources, including . . . consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." *Social Security Ruling (SSR) 96-5p. Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, 61 FR 34471-01. Likewise, an RFC is ordinarily "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). In finding Dr. Gupta's opinion about Ms. S's "work-related" sitting, standing, walking and lifting inconsistent with Ms. S's hearing testimony, the ALJ's decision—and even the Commissioner's response—seems to misconstrue Dr. Gupta's medical source statement to mean that Ms. S "was entirely precluded from doing these activities." [*See* DE 21 at 6]. However, that is not what Dr. Gupta opined—he opined that she could not engage in "work related" sitting, standing, lifting, and walking. Without more, the Court is unable to trace the ALJ's logic that an

14

opinion that Ms. S cannot perform "work-related" sitting, standing, lifting, and walking is inconsistent with Ms. S's hearing testimony as to her abilities to engage in these activities.

The Commissioner also contends that the ALJ discussed Dr. Gupta's report throughout the decision and that the ALJ appropriately considered Dr. Gupta's opinion in the context of the record as a whole. However, other than Ms. S's hearing testimony, the ALJ did not explain what evidence undermined Dr. Gupta's report. Moreover, the ALJ's discussion of Dr. Gupta's physical examination report was also problematic. Specifically, while discussing Dr. Gupta's findings as part of Ms. S's RFC analysis, the ALJ wrote that "Dr. Gupta further indicated that [Ms. S] had an antalgic gait but her cane was not medically necessary . . ." [DE 11 at 25; AR 21]. Yet, in response to the question as to whether Ms. S had been prescribed a cane or any other assistance device, Dr. Gupta's physical examination notes state: "Yes a cane and orthopedic boot that is medically No (is/not medically necessary)." [DE 11 at 395; AR 391]. Given Dr. Gupta's typographical error in this section, there is a clear gap between what the record states and the ALJ's statement in the decision. As such, the Court is unable to trace the path of the ALJ's reasoning that Dr. Gupta's examination found that Ms. S's use of a cane was not medically necessary.

In sum, without more explanation from the ALJ, there are gaps in the ALJ's logic such that the Court cannot trace the path of the ALJ's reasoning concluding that Dr. Gupta's opinion was inconsistent with or not supported by the record. Without more, the Court can only find that the ALJ misconstrued Dr. Gupta's opinion regarding Ms.

S's work-related limitations to be an opinion that Ms. S was entirely unable to engage in certain maneuvers. This error is further compounded by the ALJ's factual error stating that Dr. Gupta's physical examination found Ms. S's need for a cane not medically necessary. Consequently, the Court cannot find that the ALJ built a logical bridge to explain why Dr. Gupta's medical opinion was not consistent with or supported by the record. *Craft*, 539 F.3d at 673; *Taylor*, 2023 WL 334602, at *3.

The ALJ also stated that Dr. Gupta's opinion was not persuasive because it did not provide any specific restrictions regarding sitting, standing, walking, and lifting. Ms. S contends that Dr. Gupta's opinion is supported by the findings from his own examination. In response, the Commissioner first reiterates the ALJ's observation that Dr. Gupta's opinion did not provide any specific restriction. The Commissioner then cites to 20 C.F.R. § 404.1513(a)(2) as follows: "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." [DE 21 at 5-6].

Though not specifically developed by the Commissioner, one inference from this reference is that Dr. Gupta's medical source statement does not constitute a medical opinion under the regulations. To the extent that the Commissioner is making this contention, the Court cannot agree. Notably, the Commissioner makes this point through a mere citation without further argument. As such, it is undeveloped and considered waived. *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1992); *Handford ex rel. I. H. v. Colvin*, 2014 WL 114173, at *11 (N.D. Ill. 2014) (applying *Berkowitz* to underdeveloped arguments in a social security appeal). Likewise, the ALJ clearly

considered Dr. Gupta's opinion a medical opinion under the rules, and the Court is limited to the analysis presented by the ALJ. *Phillips v. Astrue*, 413 F. App'x 878, 883–84 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *see also Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization); *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (finding that the Commissioner's arguments failed because the Commissioner advanced grounds in support of the decision that were not given by ALJ and relied upon facts not discussed by the ALJ).

Even considering the Commissioner's argument *arguendo*, however, the Court finds that Dr. Gupta's report qualifies as a medical opinion. As previously discussed, Dr. Gupta conducted a consultative examination upon referral from the Disability Determination Bureau. Dr. Gupta provided an explanation as to what Ms. S is still capable of doing despite her limitations and expresses her impairment in terms of her ability to perform certain work demands. For instance, Dr. Gupta discussed Ms. S's ability to get on and off the examination table, walk heel to toe, and stand from a sitting position. Dr. Gupta also articulated Ms. S's fine finger skills and provided an evaluation of limits in her range of motion. *See Boyles v. Comm'r of Soc. Sec.*, No. 1:21-CV-442 JD, 2022 WL 16570645, at *3 (N.D. Ind. Nov. 1, 2022) (finding a consultative examiner's report qualified as a medical opinion because it indicated, *inter alia*, how long a claimant

17

could remain standing, the relative strength of her arms, and an evaluation of fine finger skills).

The Commissioner also contends that Dr. Gupta's "vague statement appears to pronounce [Ms. S] unable to work, but he failed to provide explanatory support to show that [Ms. S] could not do the activities listed at all." The Court cannot agree that Dr. Gupta's opinion "pronounce[d] [Ms. S] unable to work." Rather, Dr. Gupta stated that Ms. S could not perform "work-related" activities such as sitting, standing, lifting, or walking. This Court has distinguished these types of statements from statements opining disability. Notably, this Court has explained that sitting, standing, lifting, and walking are "work-related function[s]" while "opining a claimant is disabled is not a work-related function." *Michael L.*, 2021 WL 1811736, at *11 ("Clearly, the Commissioner's argument is built on the fallacy that the opinion Plaintiff could not sit for any length of time was equal to an opinion that Plaintiff was disabled."); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (finding that a medical opinion is not automatically disqualified as such merely because it includes a judgment as to disability).

Finally, the Commissioner also contends that the ALJ's decision was well-supported and that Ms. S's arguments as to supportability improperly ask the Court to reweigh Dr. Gupta's opinion and the other evidence considered by the ALJ in the decision. However, as discussed, given the ALJ's factual error stating that Dr. Gupta's physical examination found Ms. S's cane not medically necessary and the ALJ's limited explanation as to how Ms. S's testimony was inconsistent with Dr. Gupta's opinion as to

18

her work-related abilities, the Court cannot find that the ALJ adequately "consider[ed]" the regulatory factors and build a 'logical bridge' from the evidence to his conclusion." *Taylor*, 2023 WL 334601, at *3 (internal citation omitted). Without that necessary foundation, this Court is left to speculate as to the reasoning behind the ALJ's decision. This makes it impossible to determine if the ALJ's decision finding that Ms. S was not disabled was supported by substantial evidence and whether the ALJ created an RFC consistent with Ms. S's impairments and limitations. This Court has no alternative but to remand for further administrative proceedings.

## IV.   CONCLUSION

Based on the foregoing, the Court cannot find that the ALJ built a logical bridge from the evidence to his conclusion that Dr. Gupta's medical opinion was not persuasive because it was not supported by or consistent with the record. Accordingly, the decision of the ALJ is **REVERSED** and the instant action **REMANDED** for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 17th day of March 2023.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge